UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE ENRIQUEZ,

      Plaintiff,

v.                                                  Case No.  8:23-cv-0374-TPB-SPF

MARTIN O'MALLEY,
Commissioner of the Social
Security Administration,[1]

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of his claim for period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed the proper legal standards, the undersigned recommends the Commissioner's decision be affirmed.

I.

**A.**    **Procedural Background**

Plaintiff applied for a period of disability, DIB, and SSI (Tr. 282-98). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 110-

---

[1] On December 20, 2023, Martin O'Malley was sworn in as the Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi, and he is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

13). Plaintiff then requested an administrative hearing (Tr. 149-51). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 42-65). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 10-41). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-8). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

      **B.**      **Factual Background and the ALJ's Decision**

Plaintiff was born in 1979 and claims disability beginning January 1, 2018 (Tr. 282, 292). He has a high school education and past relevant work experience as a construction worker for a home remodeling company, an assembly line worker at a Smith & Wesson factory, and a Walmart janitor (Tr. 48-51). Plaintiff alleged disability due to arthritis in his lower back, disc impairments, sleep apnea, asthma, depression, and anxiety (*see* Tr. 127).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through March 31, 2023 and had not engaged in substantial gainful activity since January 1, 2018, his alleged onset date (Tr. 19). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had these severe impairments: lumbar degenerative change, obesity, asthma, right Achilles impairment (status post successful debridement and reconstruction), anxiety disorder, and depressive disorder (*Id.*). Notwithstanding these impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20).

The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work with these limitations:

> [T]he claimant can stand and walk 4 hours and sit 8 hours in an 8 hour workday. The claimant can occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs. The claimant cannot climb ladders, ropes or scaffolds. The claimant cannot balance as defined in the DOT/SCO. The claimant cannot tolerate exposure to hazards, such as dangerous moving machinery and unprotected heights. The claimant cannot tolerate exposure to past paced assembly line or conveyor belt work. The claimant can adapt to simple and occasional change in the routine work setting. The claimant can tolerate occasional exposure to concentrated: extreme cold, dust, fumes, odors, gases and poor ventilation.

(Tr. 22). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 24).

Considering Plaintiff's impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform his past relevant work but could work as a parking lot cashier, a gate attendant, or an office helper (Tr. 35). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (*Id.*).

## II.

To receive benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which will likely result in death or which has lasted or will likely last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to

benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. Review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

Plaintiff argues the ALJ erred by failing to incorporate his anxiety and depression-related limitations assessed at steps two and three of the sequential evaluation process into his RFC determination. Plaintiff also contends the ALJ erred by not considering his hand complaints to be a "medically determinable impairment" under applicable regulations (Doc. 12 at 7).

### A. Plaintiff's Mental Impairments

Plaintiff's primary argument is there is a disconnect between the ALJ's step two finding that Plaintiff has moderate limitations in three of the four broad areas of mental functioning, on the one hand, and Plaintiff's RFC limitation to no exposure to fast-paced assembly line or conveyor belt work and only simple and occasional work setting changes, on the other (*Id*. at 2-6). The Commissioner counters that the ALJ adequately accounted for Plaintiff's mental limitations, and substantial medical evidence backs the ALJ's RFC determination (Doc. 15 at 4-6).

Plaintiff's argument involves the interplay between the ALJ's evaluation of a claimant's mental impairments at steps two and three and the ALJ's assessment of a claimant's mental RFC later in the sequential process. At step two, the ALJ asks whether the claimant has a medically determinable impairment that is severe. During the administrative process, a state agency psychological consultant employs a special technique (called the Psychiatric Review Technique, or PRT) to assess the claimant's functional limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and

adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). *See Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005).[2] The agency uses a five-point scale to rate the degree of limitation: "None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4).

Then, the ALJ incorporates the results of the PRT into the findings at steps four and five of the sequential evaluation process. *Moore*, 405 F.2d at 1213-14; *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But the PRT is separate from a claimant's RFC, which is the ALJ's assessment of a claimant's maximum ability to do work despite his impairments. The mental RFC is a more detailed assessment of the claimant's ability to function. *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1180 (11th Cir. 2011). In other words, an ALJ must be more thorough in evaluating a claimant's RFC at step four than in assessing the severity of mental impairments at steps two and three. *Id.*

Here, the ALJ evaluated Plaintiff's mental impairments, singly and in combination, and opined that, while Plaintiff had severe anxiety and depression, these impairments did not meet or medically equal the criteria of any of the listed impairments

---

[2] These are what the agency terms the "Paragraph B" criteria. To satisfy the "Paragraph B" criteria, a claimant's mental impairments must result in one extreme limitation or two marked limitations out of the four broad areas of functioning. An extreme limitation is the *inability* to function independently, appropriately, or effectively and on a sustained basis. A marked limitation is a *seriously limited* ability to function independently, appropriately, or effectively and on a sustained basis. And, relevant here, a moderate limitation is defined as a *fair* ability to function independently, appropriately, or effectively and on a sustained basis.

(Tr. 19-20).  As for Plaintiff's PRT, the ALJ analyzed the results of Plaintiff's March 2021 consultative examination with psychologist Lolita Hanley, Psy.D. (Tr. 592-600).  Dr. Hanley concluded – based on Plaintiff's in-person interview, patient stress questionnaire, and mini-mental status exam – that Plaintiff was mildly limited in his ability to understand, remember, or apply information and interact with others and moderately limited in the other two areas (Tr. 599).  The ALJ modified Dr. Hanley's findings slightly, finding that Plaintiff's mental impairments resulted in moderate limitations in three areas: understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. 21-22).  Explaining her modification, the ALJ reasoned: "[Plaintiff] treats with pain medication, which could have an effect on his functioning.  As such, while the claimant's testing documented mild results, when taking into account his mental health and physical health impairments, combined with his pain medication, he would have a moderate limitation understanding, remembering or applying information." (Tr. 21).  Because Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation, the ALJ concluded that the Paragraph B criteria were not satisfied and assessed Plaintiff's RFC (Tr. 22).  *See Taviere v. Comm'r of Soc. Sec.*, No. 8:18-cv-1182-T-JSS, 2019 WL 4164961 (M.D. Fla. Sept. 3, 2019) (finding that ALJ incorporated "special technique" by explaining the evidence supporting her findings in all four functional areas).

Plaintiff does not challenge this PRT analysis.  Instead, he argues that the ALJ's RFC determination (and – by implication – the corresponding hypothetical posed to the VE) fails to reflect these moderate mental functioning limitations and that this error

requires remand (Doc. 12). Plaintiff's RFC limited him to light work with these non-exertional limitations: no "exposure to fast paced assembly line or conveyor belt work. The claimant can adapt to simple and occasional change in the routine work setting." (Tr. 22). Relying on language culled from the ALJ playbook, the ALJ found that this RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." (*Id*.). But to Plaintiff, these non-exertional limitations are not a proxy for the moderate mental functioning limitations acknowledged by the ALJ in the PRT.[3]

In *Winschel*, the Eleventh Circuit held that moderate limitations in concentration, persistence, and pace must be considered in assessing a claimant's RFC. 631 F.3d at 1180-81; *see also Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x at 950 ("In *Winschel*, we held that an ALJ must account for any of the claimant's identified limitations in his ability to maintain his concentration, persistence, or pace and rejected the argument that an ALJ satisfies this obligation by restricting the hypothetical questions to simple, routine tasks or unskilled work."). On the other hand, "an ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration difficulties." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011) (citing *Winschel*, 631 F.3d at 1181); *see also Scott v. Comm'r of Soc. Sec.*, 495 F. App'x 27, 29 (11th Cir. 2012) ("Because the medical evidence

---

[3] Plaintiff's argument appears to focus on the two areas of concentration, persistence, and maintaining pace and understanding, remembering, or applying information.

9

demonstrated that Scott could engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence, and pace, the ALJ sufficiently accounted for such impairments by limiting the hypothetical to include only unskilled work."); *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) (finding that "[b]ecause the medical evidence showed that [the claimant] could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of [the claimant's RFC] to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace (citation omitted)); *Washington v. Soc. Sec. Admin.*, 503 F. App'x 881, 883 (11th Cir. 2013) (same).

Regarding moderate limitations in the category of understanding, remembering, and applying information, cases analyzing this newer functional area are not as prevalent,[4] but courts generally hold that a limitation in the RFC to simple or routine tasks is sufficient. *See, e.g.*, *Shaffron v. Comm'r of Soc. Sec.*, No. 8:20-cv-2930-WFJ-SPF, 2022 WL 4229339, at *6-7 (M.D. Fla. July 19, 2022) (finding that RFC limitation to understanding, remembering, and carrying out simple tasks; no fast-paced production; occasional decision-making and occasional changes in work setting accounted for moderate limitations in understanding, remembering, and applying information), *report and recommendation adopted*, 2022 WL 3355094 (M.D. Fla. Aug. 15, 2022); *William S. V. v. Kijakazi*, No. 19-cv-0498-CVE-JFJ, 2021 WL 3722331, at *4 (N.D. Okla. Aug. 23, 2021)

---

[4] 20 C.F.R. § 404.1520(a)(c)(3), establishing the four functional areas an ALJ is required to assess, was revised in January 2017. The four areas of functioning were previously: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

(RFC limiting plaintiff to simple, repetitive tasks adequately accounts for moderate limitation in the area of understanding, remembering, and applying information); *Karlin v. Saul*, No. 20-3113, 2021 WL 2036649, at *4 (E.D. Pa. May 21, 2021) (ALJ adequately explained how moderate limitation in area of understanding, remembering, or applying information was incorporated into RFC where ALJ stated she accounted for it by limiting claimant to unskilled work and occasional interaction with the public).

A claimant's RFC is the most work he can do despite any limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which they are consistent with medical evidence. 20 C.F.R. §§ 404.1545(a)(2), (e); 416.945(a)(2), (e). An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). But a claimant's RFC is a formulation reserved for the ALJ, who, of course, must support her findings with substantial evidence. *See* 20 C.F.R. §§ 404.1546(c); 416.946(c); *Beegle v. Comm'r of Soc. Sec.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor.").

Here, the ALJ found Plaintiff has moderate limitations in all categories of mental functioning save for one, interacting with others, in which he had mild limitations (Tr. 21-

22).     With this in mind, the ALJ formulated an RFC for light work and posed a hypothetical to the VE positing that Plaintiff "cannot tolerate exposure to fast paced assembly line or conveyor belt work.  The claimant can adapt to simple and occasional change in the routine work setting." (Tr. 22 (decision), 61 (hypothetical)).  Substantial evidence supports this RFC.

First, there is no evidence suggesting that Plaintiff suffers further limitations to his mental functioning.  Second, in the portion of the ALJ's decision explaining the basis for Plaintiff's RFC, the ALJ detailed Plaintiff's statements that he is always in pain, that his pain impacts his ability to concentrate, and that he can cook, drive, shop, and walk for 20 minutes at a time (Tr. 23, 54-56, 348-352).  Plaintiff also reported he did well with written and spoken instructions and with changes in routine (Tr. 23, 349-52, 376).  Third, the ALJ considered Dr. Hanley's psychological evaluation (which found milder mental functioning limitations than those the ALJ acknowledged) (Tr. 30, 591-600), Plaintiff's limited outpatient mental health treatment for depression and medication management at Gandara Mental Health Center (Tr. 29, 636-80), and the two assessments by state agency consultants who opined Plaintiff was either not limited or mildly limited in all four of the areas of mental functioning (Tr. 31, 101-02, 124-25).

Finally, in questioning the VE, the ALJ posed hypotheticals that included these limitations.  All the jobs the VE identified as within Plaintiff's RFC were unskilled, and the ALJ relied on this testimony and found there are unskilled jobs in significant numbers in the national economy that Plaintiff can perform (Tr. 35) (citing all SVP level 2 jobs); *see* SSR 00-4p, 2000 WL 1898704, at *3 (stating "unskilled work corresponds to an SVP of 1-

2."). Plaintiff identifies no additional restrictions the ALJ should have incorporated into his RFC. Under these circumstances, the ALJ properly accounted for Plaintiff's moderate mental limitations through these findings.

### B. Plaintiff's Hand Impairment

Plaintiff's next argument is that the ALJ erred by finding Plaintiff's carpal tunnel syndrome a non-medically determinable impairment. She did not. To backtrack, at step two, the ALJ must decide if the claimant has either a medically determinable impairment that is severe or a combination of severe impairments. If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the next step.

Here, the ALJ found Plaintiff suffered from the severe impairments of lumbar degenerative change, obesity, asthma, right Achille's impairment (status post successful debridement and reconstruction), anxiety disorder, and depressive disorder (Tr. 19) and proceeded to the third step in the sequential evaluation process. Because the ALJ found severe impairments and proceeded to step three, she did not err. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that that ALJ must identify, at step two, all of the impairments that should be considered severe.").

Additionally, at step two the ALJ observed: "The claimant had alleged a history of carpal tunnel syndrome. However, on September 11, 2019, an EMG documented *normal findings*." (Tr. 20) (emphasis added). She continued: "On February 4, 2020, Dr.

13

Demello noted the claimant had *no evidence of carpal tunnel syndrome* (Ex. 2F). Given the lack of objective evidence on record, the undersigned finds the claimant's alleged carpal tunnel syndrome is a *non-medically determinable impairment*." (*Id.*) (emphasis added).

Substantial evidence supports this. In September 2019, Plaintiff had an EMG and nerve conduction study at Pioneer Spine and Sports Physicians to assess stiffness and pain in both hands and wrists (Tr. 539-40). Mark Chan, M.D. interpreted the results of both tests as normal (*Id.*). After that, Dr. Demello of Enfield Medical Associates treated Plaintiff for complaints of joint pain in February 2020. Although Plaintiff complained of "joint pain in multiple areas" including both wrists, Dr. Demello did not assess Plaintiff with carpal tunnel syndrome (Tr. 491-92). Plaintiff also complained of joint pain in his hands in June 2020 to Ron Paasch, M.D. of Pioneer Spine and Sports Physicians (Tr. 620-22), but the doctor did not include carpal tunnel syndrome among Plaintiff's diagnoses (Tr. 622). Additionally, Plaintiff testified he can maintain his hygiene, prepare meals, drive, and draw, all substantial evidence supporting the ALJ's finding that Plaintiff's carpal tunnel is not a medically determinable impairment (Tr. 22-24, 347-49, 373-74, 596).

Finally, Plaintiff's argument that the ALJ had to develop the record as to his hand impairment is bunk. There was substantial evidence in the record for the ALJ to decide that Plaintiff's alleged carpal tunnel syndrome was not a medically determinable impairment; the ALJ did not have to order additional testing or medical expert testimony. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (stating that ALJ's duty to develop the record does not require her to order a consultative exam if the record contains sufficient evidence for the ALJ to make an informed decision).

## IV.

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be affirmed.

2. The Clerk be directed to enter final judgment for the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on January 24, 2024.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.